1    Justin G. Reedy

2    7295 Amherst Street

3    Sacramento, CA 95822

4    (916) 428-1510

5    Plaintiff, In Pro Per

6

7

**FILED**

FEB 29 2024

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11   Justin G. Reedy,

12              Plaintiff,

13        v.

14   El Dorado County Superior Court,

15              Defendant.

16

17

18

19

20

No. 2.24-cv-0649 KJM JDP (PS)

**COMPLAINT FOR CIVIL RIGHTS
VIOLATIONS**

**DEMAND FOR JURY TRIAL**

1. **Violation of Title II Americans with
   Disabilities Act**

2. **Violation of California Constitution, Art.
   I, § 7 – Equal Protection and Due Process**

3. **Violation of 42 U.S.C. § 1983 –
   Deprivation of Fourteenth Amendment
   Equal Protection and Due Process Rights**

21

22                          **SUMMARY OF THE CASE**

23        I, Plaintiff, allege I was discriminated against and continue to be discriminated against on

24   the basis of disability in violation of state and federal law.  I am the Petitioner in family law case

25   PFL20180289 in El Dorado Superior Court.  The parties have one child, DOB: 6/19/2018.  Child

26   Custody Recommending Counseling (CCRC) is mandatory to establish a parental relationship

27   and when one party files for a change in custody/visitation.

28

1        At the onset of the case, I filed an MC-410 Disability Accommodation request with the

2  court that was denied. I was not informed and did not know I could file another.

3        Between 10/2018 and 2/2022, I attended four CCRC interviews. The reports were

4  favorable leading to joint equal custody at trial on 5/22/2019, and continuing joint equal custody

5  after trial until 2022. The first two counselors retired, and Rebecca Nelson was assigned the case.

6        The Superior Court's family law facilitator's office did not refer me to the ADA

7  Coordinator when I contacted the office asking if my mother could attend the interview as an

8  accommodation. She was listed in my file as a joined party. On 9/1/2022, I attended the fifth

9  CCRC interview without accommodations, and I was interrogated – not interviewed. I filed a

10  complaint with the administration who found she had done nothing wrong. The report of

11  9/27/2022 raised issues relating to my fitness as a parent based on my disabilities. This led to a

12  three-day trial with no change in custody.

13        The mother filed a new motion for a change in custody mandating another interview with

14  Rebecca Nelson on 1/11/2024 with accommodations that paternal grandmother would attend the

15  confidential interview as an ADA advocate. Rebecca Nelson continued to discriminate on the

16  basis of disability. The report raised issues that were unrelated to the motion and again sought to

17  investigate my fitness as a parent. Her interview was full of confirmation bias, and despite my

18  involvement in our daughter's school, she did not contact any collateral contacts there, such as the

19  child's kindergarten teacher or school administrators. Due to her powerful position, Rebecca

20  Nelson used coercive tactics to obtain my medical records, made recommendations that are

21  inconsistent with California Family Code § 3049 and construing caselaw, and she continued to

22  treat me in a discriminatory manner after I filed a complaint alleging these abuses. She then

23  made false allegations to deprive me of advocacy knowing there are no disability advocates

24  available to provide the needed support in a court setting.

25        I allege that the El Dorado County Superior Court's treatment of me discriminates on the

26  basis of disability and has and continues to deprive me of access and benefits of the Family Court

27  Services and other court services. The decisions of the court in denying my accommodations at

28  trial have impaired my parenting time, caused me grave disadvantage in providing compelling

1  testimony to buttress my position, and resulted in the mother being granted an advantage in
2  school choice and the ability to exercise sole discretion if we couldn't agree.

3      The El Dorado County Superior Court's CCRC counselor, Rebecca Nelson, violated my
4  rights by treating me as an unfit, unwanted, and unnecessary parent in front of my child, and
5  infringed on my liberty interests in the control, care, and custody of the child by insisting on
6  interviewing our 5-year-old with regard to custody/visitation when the motion before the court
7  was to change the parenting schedule not reduce my parenting time.

8      Rebecca Nelson has indelibly harmed the child and the parent-child relationship by
9  placing the child in the middle of a controversy between two parents when she is only 5 years old.
10  I am not allowed to discuss what was said to the child, and after my own experiences with her, we
11  are both traumatized by the interview.  There is no way to determine the interview technique, and
12  it will cost tens of thousands of dollars for me to litigate the recommendations despite Judge
13  Bowers already hearing the issues in the report at trial in May 2023.  I questions what was said to
14  our daughter in an interview she mandated that has now led to a CCRC report that recommends
15  the child be appointed minor's counsel.  This has caused me grave distress due to further
16  unnecessary litigation, unwarranted involvement of our child in the proceedings, and the
17  likelihood that I will lose my daughter completely.  I am indigent.

18      I have not been able to have my individualized needs considered for accommodations or
19  have equal opportunity to participate in and benefit from the programs and services the El Dorado
20  County Superior Court provides in an integrated setting.

21  **I.    Jurisdiction**

22      A. Plaintiff brings this action pursuant to Title II of the Americans with
23          Disabilities Act for violations of civil rights under the Fourteenth Amendment
24          to the United States.

25      B. This court has subject-matter jurisdiction over this matter pursuant to
26          a. Plaintiff is now and has been a U.S. citizen and litigant in a case in El
27              Dorado County Superior Court for all the time during which the actions
28              giving rise to this claim accrued.

b.  28 U.S.C. §1331 (civil actions arising under the Constitution, laws, or treaties of the United States). This complaint arises out of violation of federal law, including the 5th and 14th Amendments of the U.S. Constitution.

c.  28 U.S.C §1343(3) (states in relevant part, it's intent: "(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

d.  28 U.S.C. §1367(a) (in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy…);

e.  28 U.S.C §1391(b) (defendant's unlawful violations under color of state law of Plaintiff's constitutional rights giving rise to the claims herein accrued within this district and division);

f.  29 U.S.C. § 794. Section 504 of the Rehabilitation Act provides: No otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

g.  42 U.S.C. § 12132 [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or

4

be subjected to discrimination by any such entity.

    h. 42 U.S.C. § 12134(a) The powers, remedies, and procedures set forth in sections 2000e–4, 2000e–5, 2000e–6, 2000e–8, and 2000e–9 of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter…

    i. 28 C.F.R. § 35.160(a). [A] public entity shall 'take appropriate steps to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others.'

    j. 28 C.F.R. § 35.130(b)(7): "public entities are required, if necessary, to make 'reasonable modifications' in their services to accomplish these goals,..." *Ferguson v. City of Phoenix*, 157 F.3d 668 (9th Cir. 1998"

    k. These constitutional law violations are "capable of repetition, yet evading review." *Roe v. Wade*, 410 U.S. 113, 125 (1973) (citing *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911), *Moore v. Ogilvie*, 394 U.S. 814, 816 (1969), *Carroll v. Princess Anne*, 393 U.S. 175, 178-179 (1968), *United States v. W.T. Grant Co.*, 345 U.S. 629, 632-633 (1953));

    l. Title II of the Americans with Disabilities Act Education Amendments of 1972 (No person in the U.S. shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance);

## II.  Parties

A. Plaintiff, Justin G. Reedy.

B. Defendant, Superior Court of El Dorado County.

C.  Defendant, Rebecca Nelson, Child Custody Recommending Counselor.

**III.     Factual Allegations**

Plaintiff alleges as follows:

BACKGROUND

1.  I, Justin G. Reedy, am the Plaintiff in this matter.  I am a natural person.  I am not now, nor have I ever been married.  I am the natural father of one minor child, a daughter, born in 2018.  I have had joint equal custody of the minor child since May 22, 2019.

2.  "The ADA defines 'disability' as '(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.' 42 U.S.C. § 12102(2)."  *Gribben v. United Parcel Service, Inc.*, 528 F.3d 1166 (9th Cir. 2008).

3.  I am not employed and attending American River College (ARC) in a vocational program under a Department of Rehabilitation (DOR) contract.  As a student, I am, and continue to be, a participant in the Disability Services and Programs for Students (DSPS).

4.  I applied for disability accommodations in 2018 that were denied.  I attended four CCRC interviews without accommodations.  The first CCRC, C.J. Neustadter, was personally informed of my disabilities, and she noted the file.  The second CCRC counselor, Ady Langer, did not address any issue with my disabilities.  Both of these counselors' recommendations were to promote joint equal custody.

5.  The third CCRC counselor, Rebecca Nelson, made my disabilities the primary issue in her interview of 9/1/2022 and her report and recommendations of 9/27/2022.

She intentionally discriminated against me in her treatment of me as a participant in the Family Court Services mandated by state law.  She is discriminating against me as a parent by bullying me, threatening my custody rights, and coercing me to sign a HIPAA release.

I didn't understand the implications of signing this form.  The stated intent of asking for me to sign it was so Ms. Nelson could speak to his therapist, but I informed her that he was no longer working there.  She then shoved the form in front of me expecting me to

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS

sign it, and I did because I was afraid if I didn't, she would recommend the court terminate my custody for being non-compliant. Ms. Nelson obtained one year of my medical records that included mental health treatment which began at the onset of the legal proceedings.

6. An incorrect diagnosis was included in the CCRC report., violating my privacy. I was not informed that Ms. Nelson would include any personal information from his medical records in the report.

7. Ms. Nelson contacted collateral contacts that were neutral to the parties, but also contacted the preschool director from one of the programs the child attended after the mother made allegations that I was not parenting the child but that my mother, paternal grandmother, was acting as another parent. Ms. Tanisha Day made out-of-court statements that supported the mother's position. Mother also told Ms. Nelson that paternal grandmother had written a Yelp review. Ms. Nelson never contacted my mother to ask about her motives, but she stated in her report that they were questionable. She included a statement that Ms. Day had told her that I have a disability and even identified it as a processing deficit.

8. Ms. Nelson recommended supervised visitation four hours per week and for and for the mother to be granted sole legal custody.

9. This was a complete change from Ady Langer's prior report that was issued approximately 6 months earlier recommending no changes to custody because the child needs consistency. There had been no changes in circumstances to warrant any such limits on my parenting time and parental rights.

10. I was forced to challenge the recommendations at trial, which cost over $40,000.

11. My therapist was called to testify on my behalf. He testified that he saw no problem with my ability to parent. I saw a board-certified psychiatrist for an evaluation in preparation of rebutting Ms. Nelson's testimony. She was unable to appear at trial. The court found that her testimony would be cumulative.

12. On 5/31/2023, El Dorado Superior Court affirmed joint equal custody but granted

1    Respondent sole authority to choose a school for the minor if the parents did not agree.

2    This was predicated, in part, on prejudicial testimony by Ms. Nelson and El Dorado

3    County Superior's Court's denial of accommodations for the trial.

4  13. I filed for reconsideration citing judicial bias and addressing the mistreatment of Ms.

5    Nelson and Judge Lauren Bowers, who has repeatedly disallowed me to speak in the

6    hearings, failing to adjudicate fairly between the parties. The matter was heard on

7    8/24/2023. The court stated that it hadn't considered my disabilities when rendering the

8    decision. This is a violation of my rights under Cal. Fam. Code § 3049, which codifies

9    the decision *In Re Marriage of Carney,* which states that the court must inquire into my

10   actual and potential physical capabilities, learn how I have adapted to the disability and

11   manage my problems, consider how the other members of the household have adjusted

12   thereto, and take into account the special contributions I make to the family despite – or

13   even because of – the handicap. Her lack of concern for the required consideration of my

14   "individualized needs" and fair treatment in light of my disabilities is deliberate

15   indifference as identified in *Ferguson,* at best, but I argue it rises to discriminatory animus

16   as described in *Guardians,* 463 U.S. at 607 n. 27, 103 S.Ct. 3221."

17  14. The El Dorado Superior Court's behavior, (i.e.. Judge Bowers and Rebecca Nelson),

18   disregarded, and continue to disregard, my "individualized needs" when communicating

19   with me, although the Court was noticed of my processing deficit through the

20   administration's records and later through my own pleadings as a result of the threats to

21   my parental rights.

22  15. I have multiple disabilities – severe degenerative lower back disease as well as learning

23   disabilities. However, Ms. Nelson has treated me as though I am incapable of

24   understanding, making decisions, and parenting the child, and she has alleged that the

25   paternal grandmother is parenting the child in my home.

26  16. Learning disability (LD) is defined as a persistent condition of presumed neurological

27   dysfunction which may exist with other disabling conditions. The dysfunction is not

28   explained by lack of educational opportunity, lack of proficiency in the language of

8

instruction, or other non-neurological factors. Plaintiff met the criteria after appropriate testing and was determined to be average to above-average intellectual ability and to have a statistically significant processing deficit. I have provided this information to the court. It was supposed to be confidential under the ADA. However, because of Ms. Nelson's focus on my fitness as a parent due to being disabled, confidentiality was violated.

17. I was mistreated a second time when he met with Ms. Nelson on 1/11/2024. The Superior Court granted accommodation allowing my mother to attend the interview. She was not to talk or contribute any information. She didn't answer any questions other than those directed to her by Ms. Nelson. Ms. Nelson immediately insulted me alleging that I hadn't written the answers to the questionnaire, then she proceeded to grill me on the questions to see what I knew. She made derogatory statements and told my mother that I "was doing fine" when my mother put her hand on my shoulder to provide support during the questioning. She didn't ask if I was fine. She continued to question me on issues that were not in the motion and some should not have been before the court at all because they were already litigated or resolved.

18. Ms. Nelson's report of 2/13/2024 alleged that paternal grandmother made statements in the interview that she didn't. My mother had already testified at trial on one of the issues. She wrote a declaration for the court addressing the false allegations. This was the second time Ms. Nelson lied in the report.

19. Ms. Nelson falsely stated that my mother interfered with the interview by touching me and by pointing back to the outline/chart I had brought with me to follow so that I would be able to articulate my concerns without forgetting details that may be important in the interview. My mother did redirect me back to the outline when I was distracted by new information and questions about unrelated matters that were not contained in the motion.

20. At no time did my mother alter the fundamental nature of the Family Court program. She did not contribute any information. However, it is telling that Ms. Nelson made allegations that my mother made two statements to her in the interview which are clearly against both my interest and her own interest, including one statement that contradicts her

9

testimony at trial. The allegations are not only dishonest, but they're also not believable in the context of the entire situation because they would be harmful to my custody.

21. When I went to the interview for my daughter, I sat downstairs with my parents. Ms. Nelson came out and said, "What are YOU doing here? in a degrading way that showed that I was not welcome and that I was not needed to support our daughter. I asked for 10 minutes with her, but she said no. I asked that paternal grandfather be allowed to accompany her, and she said no. She said she worked for CPS for thirty years and that she knows how to do an interview.

22. I had to file a Reply to the CCRC Report and Points and Authorities. (Exhibit A).

## Deprivation of Liberty Interests

## Violation of Fourteenth Amendment – Due Process Clause

23. I was denied both procedural and substantive due process of law guaranteed by the U.S. Constitution when I was denied accommodations for trial. This precluded me from being able to give a compelling testimony and from being able to identify issues in other witness testimony.

24. I allege the administration of the court is governed by a policy whereby the complaint process is not taken seriously and no remedial action has been taken to correct the violations and mistreatment. There is a policy of deliberate indifference even rising to animus.

## Violation of Fourteenth Amendment – Equal Protection Clause

25. I was denied the opportunity to equally participate in school choice for our minor on the basis of my disability to inform the court and do appropriate research and present my case to the court. The Court's justification was that mother was better capable of doing this on her own, ignoring my need for accommodations and my family's contribution as part of that accommodation.

## Violations of Title II of the Americans with Disabilities Act

26. I allege that I was denied equal access and benefits of Family Court Services because of Rebecca Nelson's personal bias against me based on my disabilities. I allege that Judge

10

Bowers also deprived me of equal access and benefits of the court by not providing any protection of my civil rights in her court or in interviews conducted by Rebecca Nelson..

### Violations of California Constitution – Equal Protection

27. I was denied both procedural and substantive due process of law guaranteed by the U.S. Constitution when I was denied accommodations for trial.  This precluded me from being able to give a compelling testimony and from being able to identify issues in other witness testimony.

28. I allege the administration of the court is governed by a policy whereby the complaint process is not taken seriously and no remedial action has been taken to correct the violations and mistreatment.  There is a policy of deliberate indifference supporting Rebecca Nelson's and the Court's animus.

### Violation of California Constitution – Due Process

29. I was deprived of constitutionally protected liberty and property interests in that the violations have imposed significant monetary harm and continue to impose ongoing financial harm by continuing to threaten my custody requiring further litigation including requiring me to pay for minor's counsel for our 5-year-old child without just cause.

30. I was deprived of the opportunity to choose an appropriate school for our child because of discrimination on the basis of my learning disabilities, and I have been forced to drive excessively without any consideration of how this exacerbates my back condition when the mother has had no responsibility for school transport due to her advantage at trial and perceived superior parenting due to perceived poor parenting on my part rooted in stereotyping of disabled persons.

### Damages

31. [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.   42 U.S.C. § 12132.

Section 504 of the Rehabilitation Act provides:

No otherwise qualified handicapped individual in the United States ... shall, solely by

11

1    reason of his handicap, be excluded from participation in, be denied the benefits of, or be

2    subjected to discrimination under any program or activity receiving Federal financial

3    assistance....        29 U.S.C. § 794.

4        To help effectuate these statutory mandates the Department of Justice (DOJ) under the

5    authority of 42 U.S.C. § 12134(a) promulgated regulations regarding the responsibilities of

6    state and local government to disabled persons,..." *Ferguson v. City of Phoenix*, 157 F.3d 668

7    (9th Cir. 1998). "The regulations further provide that a public entity shall 'take appropriate

8    steps to ensure that communications with applicants, participants, and members of the public

9    with disabilities are as effective as communications with others.' 28 C.F.R. §

10    35.160(a)..."*Ferguson v. City of Phoenix*, 157 F.3d 668 (9th Cir. 1998).

11        "[P]ublic entities are required, if necessary, to make 'reasonable modifications' in their

12    services to accomplish these goals, 28 C.F.R. § 35.130(b)(7)..." Ferguson v. City of Phoenix,

13    157 F.3d 668 (9th Cir. 1998)

14        "The DOJ, deeming its regulations needed interpretation, published The Americans with

15    Disabilities Act: Title II Technical Assistance Manual, Nov. 1993 & 1994 Supp. ('Manual').

16    The Manual specifically prohibits..." *Ferguson v. City of Phoenix*, 157 F.3d 668 (9th Cir.

17    1998)

18    32. Compensatory damages are presumptively available to Plaintiff for the El Dorado County

19        Superior Court's alleged violation of his federally-protected rights pursuant *Franklin v.*

20        *Gwinnett*, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). The presumption is

21        based on the doctrine, plaintiff argues, that "the right to recover the damages from the

22        party who violated the statute" is essential "to make good the wrong done." See *Franklin*,

23        503 U.S. at 66, 112 S.Ct. 1028. The general rule is that 'absent clear direction to the

24        contrary by Congress, the federal courts have the power to award any appropriate relief in

25        a cognizable cause of action brought pursuant to a federal statute.' *Franklin*, 503 U.S. at

26        70-71, 112 S.Ct. 1028."

27    33. 135 Cong. Rec. S10742, S10760 (Sept. 7, 1989). In the House Report, Congress indicated

28        a concern over what remedies would be available to make Title II effective in combatting

1      discrimination. See H.R.Rep No. 101-485(II) & (III) reprinted in 1990 U.S.C.C.A.N. 303,

2      322, 381, 445, 475. The Report notes: "As with section 504, there is also a private right of

3      action [under Title II] for persons with disabilities, which includes the full panoply of

4      remedies." Id. at 381. *Ferguson v. City of Phoenix*, 157 F.3d 668 (9th Cir. 1998).

5      34. I have emotional, psychological, and financial damages from the mistreatment and

6      discrimination I have suffered through my involvement in this Court including tens of

7      thousands of dollars spent litigating to avoid the court's adoption of Rebecca Nelson's

8      recommendations after the first report and now for the second time, the court is ruling on

9      minor's counsel stating that one or both parents are not able to parent, and the

10     determination is clearly that I am unable to parent because the court is granting the mother

11     more rights and overlooking her clear manipulation of documents and disregard for court

12     orders. This exacerbates the problems because it increases cost, the minor's counsel takes

13     on greater responsibility for our child and essentially brings our child into the case as a

14     party who is represented when I am in pro per.

15     **IV.    Causes of Action**

16                                    **First Cause of Action**

17                 42 U.S.C. §1983: Violation of Fourteenth Amendment – Due Process

18     35. Plaintiff repeats and realleges each and every allegation contained in the preceding

19     paragraphs of this Complaint.

20     36. Each and every one of the defendants named herein, in their official capacities and as

21     individuals, acting under color of state authority, deprived Plaintiff of his rights,

22     privileges, and immunities secured by the Constitution of the United States, including but

23     not limited to both substantive and procedural due process as secured by the Fourteenth

24     Amendment to the United States Constitution (U.S. Const. Amend. XIV).

25     The Fourteenth Amendment §1 states that no state shall "deprive any person of life,

26     liberty, or property, without due process of law."

27     Title 42 U.S.C. § 1983 provides in relevant part: Every person who, under color of any

28     statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of

Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…"

37. The Ninth Circuit has held that a parent's liberty interest is neither binary nor automatic, but rather becomes judicially enforceable only when the parent "demonstrates a full commitment to the responsibilities of parenthood by coming forward to participate in the rearing of [the] child." *Kirkpatrick v. Washoe County*, 843 F.3d 784, 789 (9th Cir. 2016) (en banc).

38. As a direct and proximate result of the unlawful acts of the each and every one of the defendants named herein, Plaintiff was deprived of constitutionally protected liberty and property interests as described and suffered damages as described.

### Second Cause of Action

42 U.S.C. §1983: Violation of Fourteenth Amendment – Equal Protection

39. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint.

40. Each and every one of the defendants named herein, in their official capacities and as individuals, acting under color of state authority, deprived Plaintiff of his rights, privileges, and immunities secured by the Constitution of the United States, including but not limited to equal protection of the laws as secured by the Fourteenth Amendment to the United States Constitution (U.S. Const. Amend. XIV).

The Equal Protection Clause of the Fourteenth Amendment states, "a governmental body may not deny people equal protection of its governing laws. The governing body state must treat an individual in the same manner as others in similar conditions and circumstances."

Title 42 U.S.C. § 1983 provides in relevant part: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other

1    person within the jurisdiction thereof to the deprivation of any rights, privileges, or

2    immunities secured by the Constitution and laws, shall be liable to the party injured in an

3    action at law, suit in equity, or other proper proceeding for redress…"

**Third Cause of Action**

Violation of Title II of the Americans with Disabilities Act

41. Plaintiff repeats and realleges each and every allegation contained in the preceding
    paragraphs of this Complaint.

42. Each and every one of the defendants named herein, in their official capacities and as
    individuals, acting under color of state authority, violated Title II of the ADA.

43. As a direct and proximate result of the unlawful acts of each and every one of the
    defendants named herein, Plaintiff suffered damages including the loss of money for
    attorney fees and other legal costs and costs associated with litigation.

**Fourth Cause of Action**

(Violation of California Constitution, Art. I, § 7 – Equal Protection)

44. Plaintiff repeats and realleges each and every allegation contained in the preceding
    paragraphs of this Complaint.

45. Each and every one of the defendants named herein, in their official capacities and as
    individuals, acting under color of state authority, deprived Plaintiff of his rights,
    privileges, and immunities secured by the Constitution of the United States.

    The California Constitution Article I, §7 (a) states, in relevant part, that "A person may
    not be deprived of life, liberty, or property without due process of law or denied equal
    protection of the laws…"

46. The named defendant's actions affecting Plaintiff that are described herein were
    committed with deliberate animus based on his disabilities, supported by deliberate
    indifference by the administration.

**Fifth Cause of Action**

(Violation of California Constitution, Art. I, §7 – Due Process)

47. Plaintiff repeats and realleges each and every allegation contained in the preceding

1   paragraphs of this Complaint.

2   48. The defendants named herein, in their official capacities and as individuals, acting under

3      color of state authority, deprived Plaintiff of his rights, privileges, and immunities secured

4      by the Constitution of the United States.

5      The California Constitution Article I, §7 (a) states, in relevant part, that "A person may

6   not be deprived of life, liberty, or property without due process of law or denied equal

7   protection of the laws…"

8   49. I was deprived of constitutionally protected liberty and property interests due to

9      irregularities in the proceedings when I was denied disability accommodations for trial.

10     Rebecca Nelson has recommended my mother no longer be able to act as an advocate

11     based on false statements. The ongoing challenges to my right to disability

12     accommodations and what they should entail has precluded me from the benefits of the

13     services of the court.

14  50. The administration allowed this discrimination to continue after they had knowledge of

15     the mistreatment when I filed a complaint on 10/6/2022 and subsequently alerted the

16     administration that I did not approve of my daughter being interviewed.

17  51. As a direct and proximate result of the unlawful acts of the defendants named herein, I

18     suffered financial and emotional damages, and my five-year-old child is suffering harm

19     and under threat of losing the relationship causing harm to our relationship due to severe

20     emotional distress.

21  52. The defendant's actions affecting Plaintiff that are described herein were committed with

22     animus and deliberate indifference to his rights protected by the California Constitution.

23  **V.    Prayer for Relief**

24     WHEREFORE, Plaintiff prays that this Court:

25     (a) Enter judgment against the defendants;

26     (b) Enter a declaratory judgment declaring the acts of the defendants to be a

27  violation of Plaintiff's civil rights pursuant 42 U.S.C. §1983 and the Fourteenth

28  Amendment of the United States Constitution and Title II of the ADA and pursuant the

1    California Constitution, Article I, §7.

2    (c) Issue a temporary restraining order, and a preliminary and permanent

3    injunction enjoining defendants, their agents, servants, employees, and officers from

4    continuing to act in discriminatory manner and to refrain from taking such actions toward

5    Plaintiff in the future;

6    (d) Award Plaintiff compensatory damages in the amount he has spent on three

7    days of trial in 2023 and ongoing costs for current litigation resulting from the most recent

8    CCRC report;

9    (g) Award Plaintiff costs, interest and reasonable attorneys' fees for this action

10    pursuant to 42 U.S.C. §1988 and Title II of the ADA and other relevant statutes, if

11    applicable;

12    (h) Order such other and further relief as the Court deems just and proper under the

13    circumstances.

14    **VI.    Demand for Jury Trial.**

15    Plaintiff hereby demands a jury trial.

16    Dated February 28, 2024                    Respectfully submitted,

17

18

19    **Justin G. Reedy, Plaintiff, In Pro Per**

20

21

22

23

24

25

26

27

28

17

1  Justin G. Reedy
   7295 Amherst Street
2  Sacramento, CA 95822
   916.428.1510
3

4  JUSTIN G. REEDY, IN PRO PER

5

6

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        FOR THE COUNTY OF EL DORADO

10 | JUSTIN G. REEDY,                    | No. PFL-20180289
11 |              Petitioner,            | PETITIONER'S REPLY DECLARATION TO
                                          CCRC REPORT DATED 2/13/2024
12 |   vs.
                                          Hearing Date: Feb. 29, 2024
13 | KAYLA A. MCKINNEY,                   | Dept. 5
14 |              Respondent.            | **Honorable Judge Bowers**

15      Ms. Nelson testified at trial on 5/23/23 that "every time a child is taken to a doctor or
16 interviewed by a social worker or anyone else, it's traumatizing to the child when there's been no
17 evidence of abuse." (Exh. A pg 149). I request the court take judicial notice of Ms. Nelson's
18 testimony regarding this matter.

19      Ms. Nelson decided to interview a five-year-old at the courthouse in private without an adult
20 with whom she's acquainted to determine whether a change in a parenting was advisable. I allege
21 that this was never her reason. Based on peer-reviewed articles and guidelines for custody
22 evaluations and her own testimony, Rebecca Nelson exposed our daughter to traumatizing harm to
23 obtain "evidence" to support her own biased agenda against me. Respondent was complicit. The
24 testimony of our daughter is of highly questionable probative value, as it is widely recognized that
25 children of this age provide erroneous testimony due to limitations in their memory, communication
26 skills, and suggestibility.

27      I filed a complaint and notified the administration that I opposed the interview. Respondent
28 falsely stated on Talking Parents that the appointment would be canceled if I didn't agree. (Exh. B).

Rebecca Nelson asserted that she worked for CPS for thirty years and knows how to do an interview. Her job as CCRC is not to be a CPS interrogator. She is supposed to be identifying the issues we can agree to and helping us find a resolution or make recommendations where necessary. Instead, her behavior seeks to relitigate issues that have already been resolved by this court. For instance, Ms. Nelson lied in her report stating that my mother told her in the interview that she writes the Talking Parents messages. There are companies that help high conflict parents with live monitoring of communications for the purpose of reducing acrimony (Exh. C), demonstrating that my mother's help is in good faith and beneficial. (Exh. D pg 49). However, Rebecca Nelson doesn't seem to be aware of these benefits and doesn't focus on anything positive about my family's involvement, and this is in harmony with Respondent's attempts to alienate my mother. Respondent made this same allegation and *sought an order from the court* during the trial. (Exh. D pgs. 50-51). My mother *testified that she doesn't write my messages*. (Exh. D pgs. 160-163). Yet, *this is one of the recommendations* in Ms. Nelson's report. Disability and high stress are reasons I need help with communications and that help includes having my mother monitor the way I respond.

Ms. Nelson focused pages of her report on continuing to attack my mother, which she also did in her report of 9/27/23. She included statements from her last report in this current one despite the fact that new information is available from Blue Oaks Elementary that clearly shows that my mother is not involved in our daughter's education. In fact, I went to the afterschool program and was told that maternal grandmother picks up our daughter on a regular basis, usually within 15 minutes of our daughter arriving in the program.

Ms. Nelson's stated intent from the first interview was to "choose one parent" and she continues to pursue that end. Her last CCRC report wasted court resources, disrupted the schedules of several professionals who had to appear on my behalf as expert witnesses, and was enormously expensive. Her incompetence is harmful to our child. I have had to borrow tens of thousands of dollars to litigate matters that were exacerbated by her personal biases and unethical behavior.

Ms. Nelson's interview and report focus on all kinds of issues that are unrelated to the RFO before the court. I filed two declarations, one on 1/11/24 and one on 1/12/24 to address new issues raised in the interview that were not in Respondent's motion, including the court's adoption of the

prior CCRC's recommendation for us to keep extracurricular activities separate. Here again, Ms. Nelson is biased. The court order (See MC-030 filed 1/12/24) shows that we can schedule activities on each other's parenting time *if we get consent ahead of time*. Ms. Nelson's report attacks me for asking Respondent to bring our daughter to the ballet performance (page 8, lines 10-11) but ignores that I did so *months in advance* in compliance with the order. (Exh. E).

Clearly, the issues Ms. Nelson raises in her report have already been before the court and do not need to be relitigated, but ***both Ms. Nelson and Respondent want another bite at the apple.***

My mother was present to support me based on my "individualized needs" which included emotional support, which is what she provided. She sat quietly most of the time other than to reach out and try to keep me calm and focused. She provided no information. Yet, Ms. Nelson's report states that that "[my mother] said she made the chart for [me]." This is another outright lie. I made the chart myself. I used a similar chart on my first CCRC interview, and it helped, so I did it again.

Nickname

Judge Bowers found at trial that our daughter can be called Lilly in my home and that if she chooses, she can use a nickname. She self-identifies as Lilly to her friends but knows her mother doesn't allow her to be called Lilly and that is why she is called by her formal name at school. I ask the court to take judicial notice of its own findings that ***Ms. Nelson is not an expert in Child Development***. I therefore contest any conclusions she has drawn about the use of a nickname, and I ask the court to note that this issue is not properly before the court and that Ms. Nelson has taken it upon herself to complicate an RFO seeking to change the schedule on the basis of one 30-minute interview with a five-year-old child. These matters were resolved in an unnecessary three-day trial due to her last biased and unfounded report, and there was further hearing on reconsideration on 8/24/23 which Ms. Nelson would know if she had reviewed the file. There has been ***no report of abuse or neglect*** and ***no report of confusion at the school*** relating to our child not knowing her name or identity. In fact, Ms. Nelson once again did not due her due diligence in contacting any collateral contacts at Blue Oaks Elementary because to do so would undermine confirmation bias.

Who is parenting the child?

I requested orders to allow me to take our daughter camping on summer vacation. Despite my

1   back disabilities, I'm portrayed as someone who lays around in bed playing video games. This shows

2   a complete disregard for me as a disabled parent. Recently, my back was out, and I had to stay in bed

3   recovering after a medical visit. Being a recent event, it influenced what our child said. She probably

4   told her mother who told her to say this at the interview. If our daughter was interviewed after a trip

5   to Legoland (Exh. F), she would have said something completely different. I have always been an

6   involved parent (Exh. G), and the court should put an end to the taxpayer's burden of paying for

7   CCRC interviews that are weaponized for the exclusive purpose of finding me unfit.

8          Ms. Nelson's report is full of lies, so it's anybody's guess what the child actually said and

9   what questions she was asked. Ms. Nelson doesn't want any oversight and that is why she is seeking

10  minor's counsel so that there will be someone to help her corroborate statements from a suggestible

11  child who can't testify in court because she is too young and whose testimony is totally unreliable.

12  These are legal tactics intended to complicate a high-conflict case where custody has been resolved

13  twice at trial. It's also ludicrous that Respondent didn't know she wasn't getting weekends. This is a

14  bait and switch to get her choice for school and now to force me and our daughter to drive

15  excessively so she can have weekends without any responsibility for school transport. (See

16  Responsive Declaration addressing this issue at length).

17         The report is a waste of court resources to challenge my custody again without any

18  justification. Ms. Nelson appears to be colluding with Respondent and her family because she is

19  doing their bidding instead of conducting unbiased interviews focused on reducing conflict and

20  improving communication and coparenting. She has made inconsistent recommendations about the

21  school choice, changing her mind from her initial testimony where she stated that "the child should

22  remain in the community of one parent *if the drive to school was 30 minutes*" (Exh.H) to now stating

23  in this report that it's "not in Aliyah's best interest to attend a school outside Mother's or Father's

24  community as previously stated." (page 7, lines 23-25). That's not what she stated.

25         She changed her mind about issues to which she has *testified under oath* which doesn't

26  promote confidence. If Judge Bowers can change her mind after a three-day trial with no new

27  evidence or law, and Ms. Nelson can change her mind because she has the authority to manufacture a

28  child's testimony, and Respondent can claim she didn't know she wasn't getting weekends and needs

PETITIONER'S REPLY DECLARATION TO CCRC REPORT DATED 2/13/2024

a new mediation report to challenge my custody, then there is no confidence in this court because there is no consistency, no integrity, no oversight, and no accountability other than through an appeal.

Our daughter shouldn't be subjected to any of this. I have provided the only stability and am being forced into litigation that is destabilizing for our family. Moreover, Rebecca Nelson has made no effort to evaluate the risks to the child of being involved in a traffic accident, an injury traffic accident, or a fatal traffic accident, ignoring that road traffic accidents are a leading cause of child deaths in the U.S., accounting for one in five childhood fatalities according to the Institute for Health Metrics and Evaluation. Our daughter is too young to understand the logistical changes or to consider the extra hours on the road, and that is why it's the responsibility of parents to decide.

Ms. Nelson is using statements made by a five-year-old child to support her recommendations stating that "Aliyah is requesting to have weekends with her mother" when our daughter didn't even know what the weekend was until her mother's birthday on January 21st. She also reported our daughter stating, "she wanted *everything to stay the same* but she wants to have weekends with her mom," which is an oxymoron. There is a new dynamic. She's no longer an only child in their home. The baby comes first and has a father who is his natural father living in the home, and regardless of how much time he spends with our child, he's not her father. Disrupting her routines won't make it better. It's best for our daughter that the court continue the current arrangement.

It appears that Ms. Nelson wants to relitigate her past report as much as Respondent wants to relitigate the schedule. I requested a new trial, and that request was denied.

I am now asking the court to limit litigation to the issue properly before the court in Respondent's motion and to disregard all recommendations on the basis of bias and violations of state and federal law. The recommendations do not serve the primary interest of maintaining stability and continuity for the child. [See Addendum for Declaration of Debra Reedy.]

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Justin G. Reedy,
Petitioner, In Pro Per

PETITIONER'S REPLY DECLARATION TO CCRC REPORT DATED 2/13/2024